## The Inhabitants of the First Parish in Sutton *versus* Hannah Cole.

A mistake in the name or description of a devisee will not make void the devise where the intention of the testator is clear; as where the devisees were called by their popular name, *The South Parish in S*, their legal name being *The First Parish in S.*

*It seems* that corporations created for specific objects have no power to take and hold real estate for purposes wholly foreign to nose objects.

A parish, as well as a own, is capable of taking and holding a devise to be applied to the use of schools.

Where the record of a parish meeting shows it to have been called by the warrant of a justice of the peace, under *St.* 1786, *c.* 10, § 2, [Revised Stat. *c.* 20, § 17,] and to have been regularly warned, no exception to the authority of the magistrate appearing on the record, neither a stranger, nor, *it seems*, an inhabitant of the parish, will be allowed to question the legality of the meeting, on the ground that the application to the magistrate was signed by fewer than ten persons, or that some of the signers were not qualified voters. But *it seems* that such irregularities, if excepted to by the inhabitants at the meeting, would render the proceedings of the meeting void.

So if persons who are not qualified voters, do in fact vote at a parish meeting without being challenged, no one can take advantage of such irregularity to vacate the proceedings.

So a parish meeting called by persons acting as a committee of the parish, under color of a regular appointment, will be held legal, if no exception to their authority is taken at the meeting.

A vote of a parish "to take measures to obtain possession" of a devise, and another, "to choose agents to institute or defend any suit or suits, and act any thing relative thereto," will authorize the agents to make an entry on the land devised, previously to bringing a writ of entry.

Where two agents are appointed by a parish to make an entry on land, an entry by one alone does not pursue the authority; but the parish may avail themselves of such entry by bringing their action upon it, which will be a ratification.

Where a writ of entry was brought in the name of a parish, which had had no meeting for more than nine years before the commencement of the action, but the defendant pleaded to the merits, without contesting the authority of the attorney of the demandants, the action was sustained.

This was a writ of entry, in which the demandants counted upon their own seisin within thirty years and a disseisin by the tenant. Trial was had before *Putnam* J. upon the general issue.

It appeared that John Cole, by his last will, dated in February 1807, and proved in July following, devised the land in question, " to the South Parish of Sutton, to be applied for the use of schools, and to be kept by the inhabitants for ever."

First Parish
in Sutton
*v.*
Cole.

233

The South Parish, and the First Parish in Sutton, mean the same parish.

To prove an entry under the devise, the demandants offered in evidence a book purporting to be the records of the South Parish, in which were entered a vote of that parish at a meeting on the 2d of March, 1808, " to choose a committee, to consist of three persons, to manage the prudential affa'rs of said society," and the choice of three persons as such committee.

A warrant was issued by this committee on the 11th of April, 1808, for a meeting of the inhabitants of the parish on the 2d of May following, and at a meeting held accordingly, these votes were passed. " Voted, that the parish will take measures to obtain possession of the donation of the late Mr. John Cole. Voted, that the parish will choose an agent or agents to institute or defend any suit or suits that may be com menced for or against them, and act any thing relative thereto Voted, to choose two agents. Chose Estes Howe Esq. and Lieut. Amasa Roberts, agents."

The tenant objected to these records as evidence, on the ground that the meetings above mentioned were irregular and illegal, and all the proceedings at them void. In support of the objection, he gave in evidence the act of October 28, 1743, incorporating The North Parish in Sutton, and the act of June 25, 1794, incorporating The First Congregational Society in Sutton ; and offered to prove, that from the time of the incorporation of that society, until the 2d of March, 1808, the South Parish had not been in an organized state ; that the meeting held on that day was called by a warrant issued by a justice of the peace, upon an application of fewer than ten in habitants of the parish ; and that members of the Congregationa society voted, both at that meeting and at the meeting held on the 2d of May, indiscriminately with the inhabitants of the parish ; and that the records of the parish begin in 1808 ana terminate in 1813.

The tenant insisted that these facts, if proved, would show that the parish had not accepted of the devise, and had no entered on the demanded premises so as to maintain this action But with a view to try the merits of the case, the judge ruled

that the records were sufficient to prove that Howe and Roberts were authorized to enter and claim for the demandants, and that evidence of the facts which the tenant offered to prove was inadmissible.

The demandants then called Roberts, who testified that in 1808, after the vote by which he was chosen an agent, he entered upon the demanded premises and claimed possession for the parish, which the tenant refused to yield

A verdict was returned for the demandants.

The cause was argued in writing by *L. Lincoln*, before his appointment as a justice of this Court, for the tenant, and *E H. Mills* and *Ashmun* for the demandants.

*Argument for the tenant.* Parishes in this commonwealth are created by statute for religious purposes exclusively ; they have no powers except those given them by statute, and those extend only to the settlement of ministers, building houses of public worship, and the charges arising from and necessarily connected with these objects. *Bangs* v. *Snow,* 1 Mass. R. 190. A corporation of this description cannot act as trustee of a school fund, for this would be inconsistent with the end for which the corporation is created. In England, devises of land to charitable uses were prohibited by 9 *Geo.* 2, *c.* 36, as being within the mischief attempted to be remedied by the statutes of mortmain, and in this commonwealth, wherever an authority to receive such donations has been intended, it has been explicitly granted. See *St.* 1785, *c.* 51, and various acts incorporating literary and other institutions ; *Phillips Academy* v. *King,* 12 Mass. R. 546. However it might be urged, that a town, in its municipal character, as a corporation bound by law to provide for the instruction of children, may take a devise in trust, for the use of schools, yet unless in its parochial capacity it can accept and discharge a trust to its own use as a municipal corporation, which will not be pretended, it will follow that a parish, which has succeeded, by the operation of law, to no other than the parochial powers of a town, cannot take a devise in trust for the use of schools. This case does not come within the principles applicable to eleemosynary corporations.

From these remarks it results, that the devise to the demandants was void.

But however this may be, the action cannot be sustained, because the demandants were never seised. They have neither accepted the devise, nor made an entry upon the land. *Wells* v. *Prince*, 4 Mass. R. 64 ; *Brown* v. *Wood*, 17 Mass. R. 68 ; *Fuller* v. *Fuller*, Cro. Eliz. 422 ; *Wells* v. *Prince*, 9 Mass. R. 508 ; *Dally* v. *King*, 1 H. Bl. 1 ; Co. Lit. 240 *b*. Such an acceptance and entry could only be made by or in pursuance of some corporate act. *Monumoi* v. *Rogers*, 1 Mass. R. 162 ; *Andover &c. Turnp. Corp.* v. *Hay*, 7 Mass. R. 107 ; *Essex Turnp. Corp.* v. *Collins*, 8 Mass. R. 298 ; *Hayden* v. *Middlesex Turnp. Corp.* 10 Mass. R. 402. Here all the proceedings of the demandants in relation to the devise were illegal and void. The *St.* 1786, *c.* 10, § 2, provides that in certain cases a justice of the peace "upon the application of *ten* or more of the *voters* in the parish or pre cinct, may call a meeting." The tenant has a right to assume, that the meeting of the 2d of March 1808, was called upon the application of fewer than ten persons, and that some of those who applied were not voters ; provided it were competent to her to prove these facts. That such proof was admissible is plain from various cases in our reports ; more especially those relating to the assessment of taxes, and from cases of contested elections, in which the regularity with which similar meetings have been called, has been made a subject of investigation. To preclude an inquiry into the number and qualifications of the persons applying for a warrant, would render der the statute provision nugatory. The first meeting in March 1808, being shown to be illegal, the election of the prudential committee was void, and of course the subsequent meetings, all of which were called by this prudential committee, were illegal and their proceedings void. Another objection to all the proceedings relating to this devise, is the fact, which the tenant may consider as proved, namely, that the members of the First Congregational Society voted on the subject. By the statute of June 25, 1794, they ceased to be members of either the North or the South parish ; as is expressly adjudged in *First Parish in Sutton* v. *Cole*, 8 Mass.

R. 96. They may have been so numerous as with a minority of the qualified voters to have constituted the majority, and their interference was utterly inadmissible. *Cragie* v. *Mellen*, 6 Mass. R. 17.

First Parish in Sutton *v.* Cole.

Upon the foregoing view of the case, the entry of Roberts is immaterial, since his appointment as agent was void. But even if the meetings had been legal, still there was no entry under the authority of the demandants ; 1. because the votes of the parish did not direct such entry to be made, nor were agents appointed for that purpose ; 2. because whatever authority was given, was delegated to two persons jointly, and the entry was made by one alone.

The argument on the part of the *demandants* will appear sufficiently in the opinion of the Court. To show that they had a capacity to take the devise, both by common law and by statute, were cited 4 Cruise's Dig. *tit*. 32, *Deed*, *c*. 2, § 32 ; and *St*. 1789, *c*. 19, § 8, which enacts that parishes may vote and raise money for the support of " a schoolmaster to teach their children," &c. ; — to the point that the regularity of the meetings could not be called in question, *Thayer* v. *Stearns*, 1 Pick. 113 ; — and to the point that the demandants might avail themselves of the entry made in their behalf by Roberts, even if he had been a stranger, the bringing of the action being a ratification of his act, Phillips on Ins. 519 (cites 13 East, 274 — 4 Mass. R. 232 — 2 Caines's R. 284 — 1 Caines's R. 303) ; Plowd. 8 *b* ; Co. Lit. 245 *a*, 258 *a* ; *Herring* v. *Polley*, 8 Mass. R. 119 ; *Pratt* v. *Putnam*, 13 Mass. R. 361.

In *reply*, it was said that the *St*. 1789, *c*. 19, confers no power on a parish to manage a corporate fund, or to take property in trust, for the support of schools. Such a power would be repugnant to the general character and objects of parish corporations. The bringing of the action is ineffectual as evidence of a ratification of the entry, for it is not pretended that there was any other authority to commence it than the vote under which the entry was made, and which has been shown to be void.

The opinion of the Court was read as drawn up by
PARKER C. J. The legal existence of the demandants as

First Parish in Sutton *v.* Cole. a corporation by the name under which they have sued, does not appear to be denied, and no objection has been made, in the course of the able argument by the counsel for the tenant, to the denomination of the parish in the devise, though no parish existed with the legal name therein given. The authorities are all clear and consistent, to show that the intention of the testator in a devise or bequest will not be frustrated by a mistake in the name or description of the object of his bounty. Thus a devise to a college by a name which it bears in common parlance, though not the true corporate name, is good. *Case of Chancellor &c. of Oxford*, 10 Co. 57 ; *Counden v. Clerke*, Hob. 32. So a devise to the Mayor, Chamberlain and Governors is valid to a corporation whose true name is Mayor, Citizens and Commonalty. Owen, 35. So to the Master and Wardens of the Mystery of Cordwainers, incorporated by the name of Warden, Masters and Commonalty. *Foster v. Walter*, Cro. Eliz. 106. So a devise to Edward Williamson was held good to Edward Anderson. Godb. 17. These cases are sufficient to show that the devise in question to the Inhabitants of the South Parish, may be enjoyed by the Inhabitants of the First Parish, it being agreed that they are the same corporation.[1]

We come then to the only two questions which the case seems to admit of, in respect to which the written arguments of counsel have furnished us with all the light necessary to a decision.

It is objected first, that a parish is not such a corporation as can take a devise for the purposes intended by the testator to be secured by his gift. And the argument is, that parishes are corporations with limited powers relating only to parochial objects, such as providing for public worship, and have no authority to hold property for themselves or other persons to any other trust or purpose, or at least not for maintaining schools, which is not a duty required of them by law, so that this devise, having for its object what cannot be legally effected by

---

[1] *Inhabitants v. String*, 5 Halsted, 323 ; *Dauphin Turnp. Co. v. Myers*, 6 Serg. & Rawle, 12 ; *Porter v. Neckervis*, 4 Randolph, 359 ; 1 Kyd on Corp 236 to 252 ; *Road Co. v. Creeger*, 5 Harr. & Johns. 122 ; *African Society v Varick*, 13 Johns. R. 38 ; *Woodwick v. Forest*, Pennington, 115

a parish, is void, and the heir at law is to inherit the estate devised.

The argument does not require a decision of the general question, whether by the common law corporations may be seised in trust for the benefit of any other person, but seems to rest principally upon the nature of this particular corporation in relation to such a trust as is attempted to be created by this will; for it seems to be admitted, that if parishes were under legal obligation to maintain schools, as towns are, they might, as well as towns, receive donations in trust for that purpose. And indeed no reasonable distinction can be suggested between these two corporations, in relation to their powers in this particular, other than that which grows out of the different character of the two in this respect. Our towns are all liable by law to support schools, and are vested with power to assess the property of the inhabitants therefor. Parishes are under no such obligation, and therefore it may be well that the former may receive and hold property devised to them in ease of this burden, and that the latter may not. But we think legal liability alone does not settle the question; for if a parish may legally establish and maintain schools within their parochial jurisdiction, and may raise taxes upon the inhabitants therefor, although not required so to do under a penalty for neglect, as towns are, they may nevertheless receive donations in aid of that cause, and may with such donations and such taxes as may be necessary, establish such schools as to the inhabitants of the parish may seem proper. In such cases the gift or devise is not strictly in trust, for no other body or person is to receive the benefit. There seems to be no reason why such corporations may not be the objects of public or private bounty. Donations to them stand upon the same footing as donations to religious corporations to aid them in building and keeping in repair meeting-houses, supporting a minister, &c., and there are too many funds of this nature throughout the commonwealth to make it safe or proper to call in question their power to hold; indeed the legislature have by many public and private acts recognised the power of towns, parishes and religious societies to take and hold property for such purposes. The circumstances of the country not having been thought to require any

restraint upon the holding of property by such bodies, as in England, where the statutes of mortmain were necessary to prevent the whole property of the kingdom from being swallowed up in monasteries.

If a devise or legacy to the inhabitants of a town to be applied to the purpose of maintaining schools be valid, of which we think there is no question, then a similar devise to a parish, if vested with power to carry into effect the views of the donor, must likewise be valid. And by *St.* 1789, *c.* 19, § 8, it is expressly enacted, that all parishes may vote and raise money for the support of schools for their children.

If it be thought strange that the legislature should have made this provision, seeing that the duty of maintaining schools is exacted under penalties from the inhabitants of towns, it may be answered, that it was probably contemplated that some parishes might be desirous of maintaining schools of a different description from those required to be supported by towns, and that it was expedient to grant the power of so doing, though it was not exacted as a duty. Singing schools, for instance, and what are now so common under the name of Sunday schools, are of a parochial, rather than a municipal character. It is sufficient to know however that parishes have the right, to authorize us to determine that property given for that purpose may be held by them. Certainly they cannot apply the property so given to any other use ; and if they fail to appropriate it according to the will of the donor, they will either be compelled to execute the trust confided to them, or will forfeit their right to the property. By the common law it was the right of corporations to take and hold property, both real and personal, to their own use, unless restricted by the terms of their charter, or by immemorial usage in such corporations as exist by prescription. This common law right has been taken away in England by the statutes of mortmain, so that now corporations can take and hold real estate only by license from the king, or by act of parliament if they derive their power from that source. 1 Bl. Com. 475, Christian's note ; Co. Lit. 2. These statutes of mortmain seem never to have been reënacted, adopted or practised upon in this country,[1] but still it may be inferred from

---

[1] 2 Kent's Comm. (2d ed.) 283. But in Pennsylvania the statutes of mort-

<div style="text-align: right"><em>First Parish in Sutton v. Cole</em></div>

the special power given to various corporations, by acts of the legislature, to hold real estate to a certain limited extent, that corporations created for specific objects would not have the power to take and hold real estate for purposes wholly foreign to those objects. But with respect to our municipal corporations, though vested with no special power by their acts of incorporation, the usage has been to purchase and hold, and to take by gift and devise, estate real and personal, for the general use of the inhabitants ; and it must be well known, that there is scarcely a town in the commonwealth which does not hold property to a greater or less amount acquired from some of these sources ; and with respect to religious corporations we have a general statute, which establishes the mode in which their corporate power may be exercised over all property coming to them by gift or devise, without any limitation as to the amount.

We may consider it therefore as the settled law of this commonwealth, founded on immemorial usage as well as the implied assent of the legislative power, that towns and parishes may acquire and hold property for the use of the objects and purposes of those institutions ; and that as parishes have the right by the statute above cited, to raise and collect taxes for the maintenance and support of schools, so they may enjoy all such property as may be devised to them in furtherance of that object. In the case of *Trustees of Phillips Academy* v. *King*, there is nothing contradictory to this doctrine ; on the contrary, it is strongly intimated that such bodies are capable of taking and holding *in trust for others*, and such was the effect of the judgment in that case, the theological institution, which was the *cestui que trust*, being engrafted upon the corporation subsisting under the name of The Trustees of Phillips Academy. It was considered, that as the trust created was consistent with the purposes of the original institution, the corporation might be trustees of property so bestowed.[1]

---

main have been held to be the law of that State, so far as applicable to their political condition. See the *Report of the Judges*, 3 Binn. Rep. *App.* 595.

[1] A corporation may be seised of land and hold other property in trust for purposes not foreign to its institution. *M'Girr* v. *Aaron*, 1 Rawle, Penrose & Watts, 49 , *Greene* v. *Dennis*, 6 Connect. R. 304 ; 2 Kent's Comm. (2d ed.)

The demandants in this case then having a capacity to take and hold the estate devised for the purpose declared in the will, it only remains to be considered, whether they have become seised under the devise, so as to be able to maintain this action ; and this depends upon the question, whether they have made a lawful entry into the estate, it being very clear by the authorities cited, that without such entry the action cannot be sustained.

It was proved, that after the probate of the will, Amasa Roberts, claiming to act for and on behalf of the demandants, did in fact enter upon the estate devised and claim possession thereof for the said inhabitants. The validity of this act is questioned, on the ground that Roberts had no legal authority therefor derived from the demandants in their corporate capacity. He acted under votes of the parish passed on the 2d of May 1808, one of which was, " that the parish will take measures to obtain possession of the donation of the late Mr. John Cole, as expressed in the 2d article of the warrant," — and the other, " that the parish will choose an agent or agents according to the 4th article," — " that there shall be two agents," and that Estes Howe and Amasa Roberts be the agents. The duty of the agents, as described in the 4th article of the warrant, was " to institute or defend any suit or suits that may be commenced for or against them, and act any thing relative thereto." The warrant for this meeting was issued by three persons calling themselves the prudential committee of the parish, and it appears by the records in March preceding, that the persons who issued the warrant were " chosen to manage the prudential affairs of said society." This last mentioned meeting was held under a warrant from a magistrate of the county, which was issued on the application of certain persons under the statute which provides for such meetings in case no persons authorized to call such meetings should exist.

So far as the record goes it shows a regular meeting in March 1808, at which the parish was organized by the choice of proper officers, and if that meeting was legally called,

283; *M'Cartee* v. *Orphan Asylum Soc.* 9 Cowen, 452; *Amherst Academy* v *Cowls,* 6 Pick. 427.

me subsequent doings which resulted in the choice of the agents mentioned were regular and valid.

But the whole of these proceedings are objected to, on the ground that the original meeting was not legally called or held, it being offered to be proved at the trial that the application to the magistrate, on which the warrant was issued, was not signed by ten qualified voters of the parish, and that at that and all subsequent meetings certain persons not members of the parish acted and voted. This evidence thus offered having been rejected by the judge, we must consider, for the purpose of this motion, the facts as actually proved, to wit, that the application for the warrant was not signed by ten qualified voters of the parish, and that persons not belonging to the parish did in fact attend the meeting and vote on the subjects which were acted upon at that meeting.

The *St.* 1786, *c.* 10, § 2, [Revised Stat. *c.* 20, § 17,] provides, that in case the assessors shall unreasonably refuse to call a meeting, or a parish or precinct shall have no assessors within it to call one, or not a major part of the assessors or committee which any parish may agree upon to be chosen, any justice of the peace for the same county, upon the application of ten or more of the voters in the parish or precinct, may call a meeting.

That a meeting called by a warrant which issued on the application of less then ten persons, or, if by that number, any of the applicants not being voters, might be excepted to as irregular by the inhabitants when assembled, and if excepted to, that all proceedings under it would be void, perhaps cannot be questioned ; but that other persons not members of the parish may at any time afterwards question the legality of the meeting upon that ground, we are not prepared to say. It is not so strong a case as that of insufficient notice to the inhabitants, of the time and place of their meeting, for in such case injury is done to every inhabitant not notified, he having a right to attend and state his objections to, and vote against the measures proposed. It does not appear that any exception was taken to the meeting at the time, and we think that if there were regular notice appearing of record, and the inhabitants proceeded to transact the business for which they were called together, no defect of authority in the magistrate appearing of record, the

First Parish in Sutton *v.* Cole.

243

legality of the meeting cannot afterwards be called in question; certainly not by any but the inhabitants themselves, who alone can be prejudiced by the form in which the application was made.   In this respect the case is like that of *Thayer* v. *Stearns,* 1 Pick. 109, in which it was determined, that where it appeared by the records that notice had been given, this fact should not be contradicted by parol evidence.   The affairs of towns and other bodies politic would be in great jeopardy, if it were competent to persons, not corporators, years after their transactions at public meetings had taken place, to go behind the record and prove some defect of authority antecedent to the meeting, in order to avoid their acts.   The inhabitants themselves are alone interested in the manner in which they are assembled ; if all have notice of the meeting and choose to proceed without inquiring into the qualifications of those who applied for the meeting, there seems to be no reason why others should find fault.[1]

The other branch of this objection stands upon the same footing.   The tenant proposed to prove that persons not qualified to vote in parish affairs did in fact attend and vote, without stating how many persons of such character attended, so that it might be ascertained whether their agency had any effect on their proceedings.   It was the duty and the right of the inhabitants assembled to challenge any person not qualified who offered to vote.   Not having done so, we think it wholly unsafe, in regard to the interests of corporations, to allow of proof, after the meeting, of such a fact, with a view to vacate the proceedings.   It is believed that a precedent to that effect would be extensively mischievous, as there can be no doubt that instances frequently occur in town, as well as parish meetings, of persons being present who have not a right to vote, and the question whether they did vote or not would be liable to such uncertainty in the proof, that the very nature of the subject shows that the evil should be corrected at the time, instead of being left to remote periods afterwards.

---

[1] See *Gilmore* v. *Holt,* 4 Pick. 258; *Pejepscot Proprietors* v. *Ransom,* 14 Mass. R. 145; *Mussey* v. *White,* 3 Greenl. 290; *Waldron* v. *Lee,* 5 Pick. 326 ; *Blackburn* v. *Walpole,* 9 Pick. 100; *Ford* v. *Clough,* 8. Greenl. 334 *Willard* v. *Killingworth,* 8 Connect. R. 248.

Another answer to the first branch of the objection is fur- nished by the argument of the counsel for the defendants, which is, that the agents were chosen at a meeting called by persons acting as a committee of the parish ; and we think it clear that the actual exercise of that office under color at least of a regu- lar election, is sufficient to render legal any meeting called by such a body, if no exception is taken at the meeting.

Still however it is objected, that admitting the agents to have been duly chosen, or that their choice cannot now be inquired into, yet the votes of the parish before recited did not give them authority to enter upon the land under the de-vise ; and it is true that such authority is not expressly con-tained in the votes.

The first vote is, " to take measures to obtain possession of the donation of the late Mr. John Cole ;" and the next, " to choose agents to institute or defend any suit or suits that may be commenced for or against them, *and act any thing rela-tive thereto.*" These latter words, coupled with the expression of an intention to take measures to obtain possession, and the choice of agents expressly to institute suits, we think may fairly, and indeed must be construed to be an authority to do what was essential to the maintenance of a suit for the recovery of the land.[1]

There is however an objection, which though not insisted on by the counsel for the tenant we are bound to take notice of, and which, though merely technical, the tenant has a right to avail himself of.

It appears that the parish being called upon by the warrant to see if they would choose one or more agents or attorneys, voted to choose two, and did in fact elect Howe and Roberts. According to the testimony Roberts alone made the entry. Now it seems to be a settled principle of law, that where a bare authority is given to two persons, one alone cannot exer-cise it, nor if one dies, does the authority survive to the other. The cases put by *Coke* in his Commentary, 181 *b*, are decisive upon this point.   He says, " if a man make a letter of attor-

---

[1] See *Damon* v. *Granby*, 2 Pick. ;2nd ed.) 345.

First Parish in Sutton *v.* Cole.

ney to two, to do any act, if one of them die, the survivor shall not do it." If a charter of feoffment be made, and a letter of attorney to four or three jointly or severally to deliver seisin, two of them cannot make liveries. So a bare power to executors to sell, must be executed by all jointly. Co. Lit. 112 *b*.[2] The only cases in which the rule of law may have been thought to be relaxed, is where committees of public bodies have been allowed to act by a majority, though the authority may seem to be joint;[1] but this is from reasons of policy and public good, which do not apply in the case before us.

The objection is therefore fatal, unless the ground taken by the demandants' counsel in relation to the other objections is sufficient to remove it. They allege that admitting Roberts had no authority precedent to his entry, yet as he claimed to act for the demandants, and did actually enter under color of authority, his entry shall avail to their benefit, if they afterwards assented to and ratified his act ;[2] and that the institution of this suit is conclusive evidence of such assent and ratification.

If it appear that the suit was instituted under their authority and is prosecuted with their consent, the above argument is sound ; for by the authorities cited in the argument the position seems to be well supported, that an entry by a stranger shall avail him for whose use it was made, if adopted by him.[3] Whether it ought to be considered, that the mere commencement and pendency of the suit are a ratification, the authority of the attorney of the demandants not having been disputed, has been a matter of some doubt. It was offered to be proved at the trial, that there were no records of any parish meeting after the year 1813, which is nine years before the commencement of the suit. The authority to the agents by the vote of the parish in the year 1808, was to institute any suits, without

[2] Paley on Princip. and Agent, 129; *Copeland* v. *Mercantile Ins. Co.* 6 Pick. 202, 203; *Damon* v. *Granby*, 2 Pick. 253.

[1] See *Moffitt* v. *Jaquins*, 2 Pick (2nd ed.) 332, note 1.

[2] *Copeland* v. *Mercantile Ins. Co.* 6 Pick. 203; Paley on Princip. and Agent, 143; *Smith* v. *Cologan*, 2 T. R. 189, note; *Fenn* v. *Harrison*, 3 T. R 757.

[3] Stearns on Real Actions, (2nd ed.) 75 ; *Fitchet* v. *Adams*, 2 Str. 1128.

reference to this particular subject. We think, had the parish been called upon for their records, and had it appeared that nothing had been done in relation to this land for nine years after the entry of Roberts, and the fact of assent had been left to the jury, the issue might have been doubtful. But it seems to be a well settled principle, that when a suit is brought in the name of a corporation, if it is intended to deny the existence of the corporation, this should be brought in question by a plea in abatement, and that pleading over to the merits admits the capacity of the plaintiffs in the character they have assumed to act under. *Monumoi* v. *Rogers*, 1 Mass. R. 159. [4]

<div style="float:right">First Parish<br>in Sutton<br>*v.*<br>Cole.</div>

In 1 Wms's Saund. 319, note 1, the doctrine in relation to entries made by strangers or persons without authority, and the use to be made of such entry by those who have the right, is considered at large ; and the law 'appears to be, that the party, by assenting to such entry and acting upon it, makes it his own, and saves his rights by it. This is in relation to entries made necessary by statute to avoid a fine, and *Williams*, the annotator, says a slight recognition, and even the bringing an ejectment, is a sufficient ratification. Indeed it is laid down by Lord *Coke*, that "if an infant or any man of full age have any right of entry into any lands, any stranger in the name and to the use of the infant or man of full age may enter into the lands, and this regularly shall vest the lands in them without any commandment, precedent, or agreement subsequent." Co. Lit. 258 *a*. Probably Lord *Coke* meant to say such entry would be good without any express command or express subsequent agreement, which is also contended for in this case. The point is of no other importance in the case than as it respects the costs of this suit, for the demandants having the right, and twenty years since their right accrued not having elapsed, they might by entry maintain another action. But we think the case well supported by authority and principle, for entry has been made in the name and to the use of the demandants by a

---

[4] *Methodist Episcopal Church of Cincinnati* v. *Wood*, 5 Ohio R. 286.

First Parish in Sutton *v.* Cole.

person believing that he acted under authority from tnem They have adopted his act by bringing their action and relying upon his act as their entry.    This is a sufficient ratification.

*Judgment on the verdict.*

---

[1] See *Fryeburg Canal* v. *Frye*, 5 Greenl. 38.